UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RHONDA E. BARONE,

                                                                                           **DECISION AND ORDER**

                               Plaintiff,                                19-cv-00482(JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [6, 8].[1] The parties have consented to my jurisdiction [10]. Having reviewed the parties' submissions [6, 8, 9], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 526-page administrative record is presumed. In June 2013, plaintiff filed an application for DIB, alleging a disability onset date of January 24, 2012, due to "back pain, head injury, and migraine headaches". Administrative record [4], pp. 175-78, 210. At the time of her application, plaintiff was 44 years old. After the application was denied, an administrative hearing was conducted before Administrative Law Judge ("ALJ")

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

Sharon Seeley on September 25, 2015, at which plaintiff, who appeared with a non-attorney representative, and Jay Steinbrenner, a vocational expert, testified. Id., pp. 68-111.

Plaintiff's disability allegedly occurred in January 2012 after she fell down stairs while at work and sustained a thoracic spine compression fracture. Id., p. 426. At that time, cervical spine tests were normal, showing full range of motion of the neck. Id. A February 7, 2012 MRI revealed mild degenerative disc disease of C6-7. Id., p. 347. On February 13, 2012, plaintiff was feeling "much better", but did have "some residual pain of her . . . posterior neck area". Id., p. 429. However, she was cleared to return to work. Id. On March 20, 2012, plaintiff had a minimal restriction of her cervical rotation. Id., p. 291.

By April 2012, plaintiff complained of worsening symptoms, including dizziness, but had no weakness in her upper or lower extremities. Id., p. 289. She was assessed as 100% temporarily disabled at that time, until she could be seen by a neurologist. Id.

In June 2012, plaintiff continued to complain of dizziness and pain in the middle of her back. Id., pp. 285-86. She was given a brace for her back to take pressure off of her "mild" thoracic spine fracture. Id., p. 286. In June and July 2012, plaintiff had full range of motion in her cervical spine, and the neck examination was characterized as "benign". Id., pp. 374, 432. At that time, her gait was also normal. Id., p. 374.

On August 9, 2012, plaintiff was evaluated by Patrick Hughes, M.D. Id., pp. 434-37. At that time, she stated that she can sit for between five to ten minutes, stand for five minutes, but had "no trouble" walking. Id., p. 435. From a "neurological viewpoint", Dr. Hughes found that plaintiff could return to work with a 20-pound weight restriction. Id., p. 436. However, he deferred to plaintiff's treating neurosurgeon for the functional limitations arising from her thoracic spine fracture. Id.

In October 2012, plaintiff complained of "persistent discomfort", and an examination revealed "persistent tenderness with percussion in the mid thoracic region". Id., p. 280.  However, a CT scan showed no significant change. Id.  She remained 100% temporarily disabled. Id., p. 281.

A February 5, 2013 MRI of plaintiff's thoracic spine revealed "no significant . . . edema or enhancement compatible with a chronic fracture". Id., p. 353. On February 13, 2013, Guy Corkill, M.D. examined plaintiff.  Plaintiff stated that she was able to sit for one hour and stand for 30 minutes. Id., p. 439.  Dr. Corkill found that plaintiff had a temporary disability, and assessed her with the following limitations: "not lift over 20lbs and . . . avoid neck stressing activities such as repetitive lifting, bending, stooping, pushing, pulling, and looking up". Id., p. 438.

A June 2013 cervical spine MRI revealed "cervical spondylosis with degenerative disc disease" and "mild" stenosis. Id., p. 355.  The following month, plaintiff was assessed with a "minimal restriction in cervical spine movement". Id., p. 460.

On August 21, 2013, Harbinder Toor, M.D. conducted a consultative internal medical examination and assessed plaintiff with the following limitations: "moderate limitations to pushing, pulling, reaching, and twisting of the cervical spine"; "moderate limitation to sitting a long time"; and "moderate to severe limitation to bending or lifting". Id., p. 450.

In September plaintiff was assessed with a "mild restriction in cervical spine motion". Id., p. 510.  On September 27, 2013, plaintiff was seen by Garret Morris, M.D. for an epidural injection.  After assessing plaintiff, he determined that "the picture is one of predominate psychological dysfunction likely related to posttraumatic stress disorder as well as cervical spondylosis and continuing muscle spasm". Id., p. 456.  As a result, he referred plaintiff

to a behavioral pain psychologist. Id.  When plaintiff saw Dr. Morris in October 2015, she reported that the epidural steroid injection that she received in June provided "significant relief for about 2-1/2-3 months".  Id., p. 524.  However, she was reluctant to undergo a further injection at that time. Id., p. 525.  Although her cervical range of motion was improved, she still had "tenderness throughout the paraspinals bilaterally".  Id., p. 526.  Dr. Morris directed her to exercise as tolerated and to follow-up with psychiatrist. Id., p. 525.

Based upon the medical evidence and testimony, ALJ Seeley found that plaintiff's degenerative disc disease of the cervical spine was a severe impairment.  Id., p. 54.[2]  She concluded that plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work.  Id., p. 55.  Specifically, she found that plaintiff had the "ability to lift, carry, push and pull twenty pounds occasionally, and ten pounds frequently; sit for six hours in an eight-hour workday, alternating after one hour to standing for five minutes; and stand and/or walk for six hours in an eight-hour workday, alternating after one hour to sitting for five minutes"; "occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead with the bilateral upper extremities ; and frequently reach in all other directions"; and "occasionally rotate her neck more than forty-five degrees to the left or right and fifteen degrees up or down". Id., p. 55.  In reaching that RFC, ALJ Seeley gave substantial weight to the functional limitations assessed by Drs. Hughes and Corkill, and gave "less weight" to the opinion of Dr. Toor than to those of Drs. Hughes and Corkill.  Id., pp. 58-59.

At the hearing, plaintiff testified that she can stand for up to 15 minutes and sit for up to 30 minutes at one time.  Id., p. 92. ALJ Seeley found that plaintiff's subjective complaints were not fully supported by the objective medical evidence, explaining, *inter alia*, that:

---

[2]   ALJ Seeley also assessed plaintiff with severe mental limitations.  Since plaintiff's motion is focused on her physical limitations, I have omitted any discussion of plaintiff's mental impairments.

"[d]iagnostic testing revealed a mild compression fracture, and mild degenerative disc disease with moderate stenosis . . . . [C]laimant acknowledged . . . that she has undergone no testing since 2013. Physical examinations generally revealed mild restrictions in range of motion of the cervical spine, normal reflexes, along with some reduced sensation in the upper extremitites and pain of motor testing without identification of focal dysfunction . . . . [T]reatment has essentially been routine and/or conservative in nature". Id., p. 61.

Based upon the RFC and the vocational expert's testimony, ALJ Seeley determined that plaintiff was capable of performing her past relevant work as a ticker seller or other jobs that exist in significant numbers in the national economy, and therefore was not disabled from January 24, 2012 (plaintiff's original onset date) through the date of her April 1, 2016 opinion. Id., pp. 61-63.

Plaintiff submitted additional medical records to the Appeals Council, but it declined to review ALJ Seeley's decision. Id., pp. 14-17. Thereafter, this action ensued.

## DISCUSSION

**A.      Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520,

416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Seeley's "highly specific RFC determination was a product of her lay judgment, and is not supported by substantial evidence". Plaintiff's Memorandum of Law [6-1], p. 1.  Specifically,  she points to two portions of the RFC:  First, that plaintiff can "sit for six hours in an eight-hour workday, alternating after one hour to standing for five minutes; and stand and/or walk for six hours in an eight-hour workday, alternating after one hour to sitting for five minutes" ([4], p. 55); and second, that plaintiff can "occasionally rotate her neck more than forty-five degrees to the left or to the right and fifteen degrees up or down".  Id.

**B.      Did ALJ Seeley, as a Layperson, Improperly Formulate the RFC?**

An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order).  However, in the absence of a competent medical opinion, an ALJ, as a layperson, is generally "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself." Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018). *See also* Goble v. Colvin, 2016 WL 3179901, *6 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"); Wilson v. Colvin, 2015 WL 1003933, *21 (W.D.N.Y. 2015) ("[a]n ALJ

-6-

is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence"); Guttierez v. Berryhill, 2018 WL 3802015, *3 (W.D.N.Y. 2018); Dye v. Commissioner of Social Security, 351 F. Supp. 3d 386, 390–91 (W.D.N.Y. 2019) ("an ALJ is not a medical professional, and is not qualified to assess a claimant's RFC on the basis of bare medical findings. . . . As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence").

The record here contains several medical opinions assessing plaintiff's functional limitations. In particular, ALJ Seeley gave significant weight to the functional limitations assessed by Drs. Corkill and Hughes. [4], p. 58. Although plaintiff complained of sitting and standing limitations to Drs. Corkill (id., p. 439 (could sit for one hour and stand for 30 minutes) and Hughes (id., p. 435 (could sit for five to ten minutes and stand for five minutes), neither of these physicians assessed her with any sitting or standing limitation. ALJ Seeley was "entitled to rely not only on what the record says, but also on what it d[id] not say". Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). *See also* Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir.1995) ("the ALJ relied on the fact that no examining physician . . . had indicated that plaintiff had difficulty sitting for a prolonged period of time . . . . Only the chiropractor had made a finding that plaintiff could not sit for prolonged periods of time . . . which the ALJ had the discretion to discount. Because the burden was on plaintiff to prove that she could not resume her work . . . it was proper for the ALJ to rely on the absence of findings by any physician concerning plaintiff's alleged inability to sit for prolonged periods").

ALJ Seeley "was entitled to choose between properly submitted medical opinions and to consider other evidence of record in determining plaintiff's RFC." Eichelberger v. Saul,

2019 WL 4072752, \*3 (W.D.N.Y. 2019).  The only medical opinion evidence in the record indicating that plaintiff had any standing or sitting limitation was Dr. Toor's opinion that plaintiff had a moderate limitation for prolonged sitting. [4], p.  However, ALJ Seeley gave less weight to that opinion than to those of Drs. Hughes and Corkill, and plaintiff does not dispute how ALJ Seeley weighed the opinion evidence. Id., p. 59.

Although ALJ Seeley's determination that plaintiff could sit or stand/walk for six hours in an eight hour workday if permitted to alternate positions every hour for five minutes does not perfectly correspond to any of the medical opinions, "[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination".  Young v. Berryhill, 2018 WL 2752443, \*2 (W.D.N.Y. 2018).  "The question is, instead, whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, \*4 (S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 Fed. App'x 98, 101 (2d Cir. 2017) (Summary Order)). See Butler v. Commissioner of Social Security, 2017 WL 2834482, \*8 (N.D.N.Y. 2017) ("[i]t is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence").

Initially, as the Commissioner argues, ALJ Seeley "may have been too accommodating". Commissioner's Brief [8-1], p. 22.  Lacking from the record is any medical opinion that plaintiff needed to alternate positions or had any standing limitation.  Even if ALJ Seeley gave significant weight to that portion of Dr. Toor's opinion that plaintiff had a moderate limitation for prolonged sitting, Dr. Toor did not indicate that plaintiff needed to switch positions or had any standing limitation.  Moreover, "several courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant

had moderate difficulties in prolonged sitting or standing". Varnum v. Colvin, 2016 WL 4548383, *10, 17 (W.D.N.Y. 2016) ("the ALJ's determination that [the plaintiff] was capable of performing light work so long as she was provided the ability to alternate positions . . . was well-supported by [Dr.] Toor's opinion" that the plaintiff had "moderate limitations in standing, walking, and sitting a long time"). *See also* Funk v. Astrue, 2012 WL 501017, *3 (N.D.N.Y. 2012) (a moderate limitation in prolonged sitting would not preclude sitting for up to six hours in an eight-hour day).

"Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ". Beaman, 2020 WL 473618 at *6. Hence, "[w]here an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand". Yargeau v. Berryhill, 2018 WL 1335388, *3 (W.D.N.Y. 2018) (emphasis in original). *See* Castle v. Colvin, 2017 WL 3939362, *3 (W.D.N.Y. 2017) ("the fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand"); Shorter v. Commissioner of Social Security, 2014 WL 1280459, *10 (N.D.N.Y. 2014) ("[i]n light of the other substantial evidence in the record supporting the ALJ's RFC determination and the fact that the RFC determination is actually more restrictive than Corwin's assessment, any error in considering this report was harmless"). *See also* Abernathy v. Colvin, 2015 WL 4611880, *4 (W.D.N.Y. 2015) ("[a]lthough it appears . . . that the ALJ may have improperly substituted his own lay opinion for that of Dr. Andrews, any error is harmless").

In any event, I conclude that ALJ Seeley did not err in determining plaintiff's sitting and standing limitations. "[W]hen the record contains at least some evidence of a specific limitation, the ALJ may appropriately reach a specific RFC incorporating that limitation."

Heckman v. Commissioner of Social Security, 2019 WL 1492868, *4 (W.D.N.Y. 2019). Here, ALJ Seeley formulated the RFC, in part, by partially accepting plaintiff's testimony that she was unable to sit for more than 15 to 20 minutes and stand for more than 15 minutes at a time. [4], p. 92. "A claimant's testimony is acceptable evidence to support the inclusion of a limitation in an RFC determination." Yargeau, 2018 WL 1335388 at *4.

While plaintiff did testify to having significant sitting and standing limitations ([4], p. 92), she does not contest ALJ Seeley's credibility determination which partially credited her allegations concerning the limiting effects of her pain. "In assessing Plaintiff's RFC, the ALJ was free to credit some of plaintiff's statements while discrediting others". Beaman v. Commissioner of Social Security, 2020 WL 473618, *6 (W.D.N.Y. 2020). *See also* Davis v. Colvin, 2017 WL 745866, *12 (W.D.N.Y. 2017) ("other than his own statements concerning his inability to stand for prolonged periods, which were discounted by the ALJ . . . Davis has failed to identify any record evidence that is inconsistent with the limitations assessed by the ALJ"); Baker o/b/o Baker v. Berryhill, 2018 WL 1173782, *3 (W.D.N.Y. 2018) ("[i]n essence . . . Plaintiff faults the ALJ for having accepted Claimant's testimony that she was required to change positions after half an hour of sitting because no medical source opined that she required a sit/stand option. The Court does not find that this constitutes reversible error").

In formulating that RFC, ALJ Seeley permissibly considered the objective medical evidence, plaintiff's treatment history and allegations, and medical opinions of record. Therefore, I conclude that the sitting and standing limitations assessed by ALJ Seeley were consistent with the record and supported by substantial evidence.

Similarly, in McKillip v. Commissioner of Social Security, 2019 WL 5677595, *8 (W.D.N.Y. 2019), the court concluded that the ALJ did not err in finding that the plaintiff could

"only sit for thirty minutes, stand for thirty minutes, or walk for thirty minutes at a time and would need to alternate positions within those thirty-minute requirements", where the ALJ gave partial weight to a medical opinion that plaintiff had moderate limitations in walking and standing, and partially credited plaintiff's testimony "that she needs to alternate positions after sitting for 15-20 minutes or standing for 10-15 minutes and can walk only one block before needing to rest". *See also* Davis, 2017 WL 745866 at *11 (finding that the ALJ did not err by assessing a one-hour standing limitation even though it did not precisely correspond to any medical opinion because the plaintiff's daily activities, treatment history, and at least some of the medical evidence supported that limitation); Palistrant v. Commissioner of Social Security, 2018 WL 4681622, *5 (W.D.N.Y. 2018) (same); Crosby v. Berryhill, 2017 WL 3065271, *3 (W.D.N.Y. 2017) ("although no medical source opined precisely that plaintiff needed to change positions every 45 minutes, the ALJ's RFC finding is supported by substantial evidence"). *But see* Harrington v. Saul, 2019 WL 3945775, *3 (W.D.N.Y. 2019) (finding that the ALJ's RFC that the plaintiff "is able to sit for 6 hours out of 8 hours" and "stand and walk in combination for 6 hours out of 8 hours" was the product of the ALJ's own surmise, where there was no medical opinion concerning the plaintiff's capacity for sitting and standing and the RFC contradicted the plaintiff's testimony).

    Plaintiff's reliance on Heckman, supra and Cosnyka v. Colvin, 576 Fed. App'x 43 (2d Cir. 2014) (plaintiff's Memorandum of Law [6-1], p. 21) does not compel a different conclusion.  In Heckman, there was a medical opinion in the record, consistent with plaintiff's testimony, that directly contradicted the ALJ's determination that the plaintiff had the ability to sit for 60 minutes before standing up. 2019 WL 1492868 at *4. Likewise, in Cosnyka, the orthopedic examiner, concluded that the plaintiff required "regular comfort breaks". 576 Fed.

Appx. at 46. Here, by contrast, there are no medical opinions requiring plaintiff to alternate between sitting and standing, or limiting her capacity for standing. *See* Dumas, 712 F.2d at 1553 (the ALJ was "entitled to rely not only on what the record says, but also on what it d[id] not say").

Likewise, I find no error in ALJ Seeley's finding that plaintiff was limited to "occasionally rotat[ing] her neck more than forth-five degrees to the left or right and fifteen degrees up or down". [4], p. 55. While plaintiff contends that those limitations were the result of ALJ Seeley's lay measurement, it is evident from the record that they came directly from plaintiff, who agreed that he could only turn his head 45 to 50 degrees ([4], p. 104), and plaintiff's own representative, who testified that plaintiff could look up and down "an eighth" of the way, after plaintiff testified that she could do so "a quarter maybe". Id. "There is no error where, as here, an ALJ bases his RFC on Plaintiff's own testimony." Scouten v. Colvin, 2016 WL 2640350, *4 (W.D.N.Y. 2016). *See also* Coston v. Saul, 2019 WL 4291314, *4 (W.D.N.Y. 2019) ("[p]laintiff's own testimony established that he was capable to performing the full range of light work" (emphasis omitted)).

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [8] is granted, and plaintiff's motion [6] is denied.

 **SO ORDERED**.

Dated: July 15, 2020

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge